# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**GREAT-WEST FINANCIAL RETIRMENT PLAN SERVICES, LLC,**

    Third-Party Plaintiff,

v.

**COMPUTER CONSULTING SERVICES OF AMERICA, INC. d/b/a CLIENTSOLV TECHNOLOGIES,**

    Third-Party Defendant.

Case No. 17-2136-CM-GEB

## MEMORANDUM AND ORDER

This matter comes before the court on third-party defendant Computer Consulting Services of America, Inc. d/b/a ClientSolv Technologies' Motion for Judgment on Pleadings (Doc. 75) and third-party plaintiff Great-West Financial Retirement Plan Services, LLC's Motion for Judgment on the Pleadings (Doc. 78). In dispute is whether third-party defendant is obligated under its agreement with third-party plaintiff to indemnify third-party plaintiff for its cost of defending this action. For the reasons below, the court grants third-party defendant's motion and denies third-party plaintiff's motion.

### I.  Background

In 2006, third-party plaintiff entered into a contract with Corporate Employment Resources, Inc. ("CoreStaff") in which CoreStaff agreed to provide temporary workers to third-party plaintiff. On June 28, 2010, CoreStaff and third-party defendant entered into an agreement under which third-party defendant agreed it would supply temporary workers to third-party plaintiff. In October 2015, third-party defendant placed plaintiff Tom Pattison ("Pattison") as a temporary employee with third-party plaintiff. Pattison and third-party defendant had an employment agreement which contained an arbitration provision. On March 2016, CoreStaff and third-party defendant entered into another

-1-

contractual agreement ("the agreement") in which CoreStaff subcontracted its temporary services provision to third-party defendant. Third-party plaintiff is an express third-party beneficiary to the agreement.

Third-party plaintiff terminated Pattison's temporary employment on August 25, 2016. Pattison then filed a petition against third-party plaintiff in Johnson County District Court on February 6, 2017, alleging statutory and common law claims arising from his termination. The case was removed to this court on March 3, 2017, and Pattison's claims were dismissed on July 10, 2018.

In response to Pattison's petition, third-party plaintiff requested indemnification from third-party defendant pursuant to the indemnification provision in the agreement. Despite the timely notifications, third-party defendant rejected the demand for indemnification claiming that Pattison's claims arose from the "intentional misconduct" of third-party plaintiff—excluding them from the indemnification provision set forth in the agreement. Third-party plaintiff renewed its demand for indemnification to third-party defendant pursuant to the agreement. Third-party defendant again rejected this demand on May 23, 2017. On July 7, 2017, third-party plaintiff filed its third-party complaint alleging breach of contract for refusing to indemnify it in the action filed by Pattison. On September 21, 2018, third-party defendant filed a third-party motion for judgment on pleadings arguing that the lawsuit arose out of "intentional misconduct" by third-party plaintiff, rendering the indemnification clause unenforceable. On October 12, 2018, third-party plaintiff filed an opposing motion for judgment on the pleadings, claiming that third-party defendant breached their contractual obligations. Third-party plaintiff requests relief in the form of fees, including costs for defense in the suit with Pattison, attorney's fees, and court costs.

**II.     Legal Standards**

When considering a Rule 12(c) motion for judgment on the pleadings, the court evaluates the motion under the same standard as a Rule 12(b)(6) motion to dismiss. *Turner v. City of Tulsa*, 525 F. App'x 771, 772 (10th Cir. 2013). Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 8(a)(2) states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss under 12(b)(6), a complaint must contain "enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim is plausible when "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). When the complaint contains well-pleaded factual allegations, a court should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

"All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009). The court construes any reasonable inferences from these facts in favor of the plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

**III. Analysis**

At issue in the parties' competing motions for judgment on the pleadings is whether third-party defendant is obligated under its agreement with third-party plaintiff to indemnify third-party plaintiff for the costs of defending this action. The relevant provision in the agreement states:

> [Third-party defendant] shall defend, indemnify and hold harmless [third-party plaintiff] and CORESTAFF from any and all claims, damages, suits, judgments, fines, settlements, or liabilities of any kind either CORESTAFF or [third-party plaintiff] may incur which are arising from or related to: . . . (b) any claim or suit asserted by any employee of [third-party defendant] against [third-party plaintiff] or CORESTAFF (except where such suit arises out of the intentional misconduct of CORESTAFF or [third-party plaintiff] . . . .

(Doc. 77-1, at 13.) The term "intentional misconduct" is not defined within the agreement. To resolve the dispute, the court must determine whether third-party plaintiff's alleged actions against Pattison were intentional misconduct that fall outside the scope of the indemnification provision.

It is undisputed that the agreement contains a choice of law provision that provides that the agreement is to be interpreted and enforced under Colorado law. "Under Colorado law, indemnity provisions are governed generally by the same rules of construction that govern other contract provisions." *Five Rivers Ranch Cattle Feeding LLC v. KLA Env't Srvs, Inc.*, No. 08-2185-EFM, 2010 WL 2609426, at *4 (D. Kan, June 25, 2010) (citing *Mid Century Ins. Co. v. Gates Rubber Co.*, 43 P.3d 737, 739 (Colo. Ct. App. 2002)). Indemnity provisions, therefore, "are generally construed to effectuate the parties' intentions." *Id.* To ascertain the parties' intent, "the Court must apply the plain and generally accepted meaning of the provision's language and interpret the agreement in its entirety." *Id.*

Because the agreement does not define the term "intentional misconduct," the court must give the terms their "plain meaning according to common usage." *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002). Courts may use recognized dictionary definitions when determining the plain and ordinary meaning of words. *Owners Ins. Co. v. Dakota Station II Condo. Ass'n Inc.*, 443 P.3d 47, 51 (Colo. 2019). Black's Law Dictionary defines intentional as "done with the aim of carrying out the act." INTENTIONAL, Black's Law Dictionary (11th ed. 2019). And misconduct is defined as "a dereliction of duty; unlawful, dishonest, or improper behavior, esp. by someone in a position of authority or trust." MISCONDUCT, Black's Law Dictionary (11th ed. 2019). According to the Merriam-Webster Dictionary, intention is defined as "done by intention or design." Merriam-Webster Dictionary,

https://www.merriam-webster.com/dictionary/intentional. Misconduct is defined as "mismanagement especially of governmental or military responsibilities"; "intentional wrongdoing, specifically: deliberate violation of a law or standard especially by a government official"; and "improper behavior, adultery." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/misconduct.

The court declines to adopt third-party plaintiff's definition of misconduct, which would require allegations of intentional law violations. This is only one part of Merriam-Webster's definition of misconduct, and nothing in the agreement indicates the parties intended for intentional misconduct to be limited only to law violations. Instead, when considering these dictionary definitions as a whole, intentional misconduct can be generally defined as deliberate wrongdoing or improper behavior.

To determine whether third-party defendant had a duty to defend third-party plaintiff, the court must look to the complaint to see if Pattison's allegations against third-party plaintiff could be considered intentional misconduct. *See Cyprus v. Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003) (noting, "[w]e have long held that to determine whether a duty to defend exists, courts must look no further than the four corners of the underlying complaint (the "four corners" or "complaint" rule.). The Colorado Supreme Court has held that the complaint rule is "designed to cast a broad net in favor of coverage." *Id.* at 297 (discussing the duty to defend in the insurance indemnity context). The actual liability of the party, however, is not to be considered when determining whether there is a duty to defend. *See Hecla Min. Co. v. New Hampshire Ins. Co*., 811 P.2d 1083, 1089 (Colo. 1991).

In his complaint against third-party plaintiff, Pattison alleged two claims related to his termination—a violation of K.S.A.§ 44-1132 and common law retaliatory discharge.

Under K.S.A. § 44-1132(a):

An employer may not discharge or in any manner discriminate or retaliate against an employee who is a victim of domestic violence or a victim of sexual assault for taking time off from work to:

-5-

> (1) Obtain or attempt to obtain any relief, including, but not limited to, a temporary restraining order, restraining order or other injunctive relief to help ensure the health, safety or welfare of the victim or the victim's child or children;
> (2) seek medical attention for injuries caused by domestic violence or sexual assault;
> (3) obtain services from a domestic violence shelter, domestic violence program or rape crisis center as a result of domestic violence or sexual assault; or
> (4) make court appearances in the aftermath of domestic violence or sexual assault.

This court has previously held that K.S.A. § 44-1132 does not provide a private cause of action. (Doc. 68, at 4.) But again, the actual liability of third-party plaintiff is irrelevant for the duty to defend analysis. The court must determine, based on the allegations in the complaint, whether Pattison's allegations constitute intentional misconduct by third-party plaintiff. K.S.A. § 44-1132 prohibits discharge, discrimination, or retaliation against an employee who is a victim of domestic violence. In other employment discrimination contexts, the plaintiff has the burden of "persuading the trier of fact that the defendant intentionally discriminated against the plaintiff . . . ." *Reber v. Mel Falley, Inc.*, 683 P.2d 1229, 1231 (Kan. 1984) (discussing the *McDonnell Douglas* burden shifting framework for discrimination claims.)

And in regard to the retaliatory discharge claim, Kansas recognizes this tort as a limited exception to the at-will employment doctrine. *See Campbell v. Husky Hogs*, *L.L.C.*, 255 P.3d 1, 5 (Kan. 2011). Retaliatory discharge claims are often recognized in circumstances where an employee is "discharged in contravention of public policy." *Id.* Kansas uses the same burden-shifting approach that is applied in discrimination cases for analyzing retaliatory discharge claims. *See Bracken v. Dixon Indus., Inc.*, 38 P.3d 679, 682 (Kan. 2002). If a plaintiff can establish a prima facie case of retaliatory discharge, it raises "'a rebuttable presumption of a retaliatory intent.'" *Id*.

In his complaint, Pattison alleges that he—while an employee of third-party plaintiff—took time off work because he was the victim of domestic violence. He claims third-party plaintiff terminated his

employment after law enforcement officers showed up at his place of work to discuss a domestic abuse situation that had occurred at his residence. This conduct, he alleges, violates K.S.A. § 44-1132 and third-party plaintiff is guilty of retaliatory discharge against him.

The court believes that these allegations amount to intentional misconduct that relieves third-party defendant from its duty to defend or indemnify under the agreement. A cursory review of the claimed causes of action show that in Kansas, a party must act intentionally to be liable. And violations of statutes or intentional torts fall within the definition of misconduct.

The court is not persuaded by third-party plaintiff's theories as to why its conduct was not intentional. First, third-party plaintiff claims that it did not intend to cause the harm alleged by Pattison and argues that several courts have held that in indemnification clause cases, the intentional act must have an intended injury. *See Hecla*, 811 P.2d at 1088; *Magnus, Inc. v. Diamond State Ins. Co.*, 545 F. App'x 750, 753 (10th Cir. 2013). The cases cited by plaintiff are not similar enough to the facts of the present case. Here, the court must determine whether third-party plaintiff's conduct was intentional misconduct, not whether an occurrence was an accident or non-accident for insurance coverage purposes. Regardless, the court does not believe that third-party plaintiff could not have intended or expected the damages alleged by Pattison. Employment termination naturally carries with it the damages alleged in Pattison's complaint.

Further, third-party plaintiff argues that it could not have committed intentional misconduct because it was not put on notice as required by K.S.A. § 44-1132 and that it could not have intentionally committed any misconduct because at the time of Pattison's termination, it was not established in Kansas that it was unlawful to terminate an employee because he was the victim of domestic violence, as alleged in the complaint. The court, however, believes these arguments go more toward the merits of Pattison's

claims rather than whether his allegations establish that third-party plaintiff's conduct was intentional misconduct that would negate third-party defendant's duty to defend or indemnify.

The court would also note that third-party plaintiff raises concerns that if the court finds its conduct falls outside the scope of the indemnification provision, this would undermine the purpose of the provision, effectively rendering it worthless. In this case, however, the court believes that Pattison's two causes of action constitute a plain and generally accepted definition of intentional misconduct, especially without further specificity and guidance within the agreement about the type of conduct that is considered intentional misconduct.

**IT IS THEREFORE ORDERED** that third-party defendant Computer Consulting Services of America, Inc. d/b/a ClientSolv Technologies' Motion for Judgment on Pleadings (Doc. 75) is granted.

**IT IS FURTHER ORDERED** that third-party plaintiff Great-West Financial Retirement Plan Services, LLC's Motion for Judgment on the Pleadings (Doc. 78) is denied.

This case is closed. The clerk of the court is ordered to enter judgment in favor of third-party defendant and against third-party plaintiff.

Dated August 23, 2019, at Kansas City, Kansas.

> s/ Carlos Murguia
> **CARLOS MURGUIA**
> **United States District Judge**